A091 (Rev. 8/01) Criminal Complaint

Clerk, U.S. District Court
Southern District of Texas
FILED

APR 13 2015

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA
V.
**Samuel HERNANDEZ**

**CRIMINAL COMPLAINT**

Case Number: C-15-416 M-1

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about __4/11/2015__ in __Kenedy__ County, in the
(Date)

Southern    District of    Texas    defendant(s),    **Samuel HERNANDEZ**

did knowingly or in a reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law, transport, or move or attempt to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law

in violation of Title __8__ United States Code, Section(s) __1324__ .
I further state that I am a(n) __Border Patrol Agent__ and that this complaint is based on the
following facts:                        Official Title

See Attached Affidavit of U.S. Border Patrol Agent    **David Smith**

Continued on the attached sheet and made a part of this complaint:    [X] Yes    [ ] No

_____
Signature of Complainant

**David Smith**
Printed Name of Complainant

Sworn to before me, signed in my presence, and probable cause found on:

__April 13, 2015__    at    __Corpus Christi, Texas__
Date                                   City and State

__Jason B. Libby__, U.S. Magistrate Judge    _____
Name and Title of Judicial Officer              Signature of Judicial Officer

AFFIDAVIT

The information contained in this report/affidavit is based upon my personal participation in the investigation, which included, but is not limited to information related to me by other agents and officers participating in the investigation.

On April 11, 2015, Border Patrol Agent Miguel Esparza Jr. was assigned to the primary lane inspection duties at the United States Border Patrol Checkpoint near Sarita, Texas. At approximately 9:45 p.m., a brown 2005 Nissan Sentra entered the primary inspection lane. The vehicle had three visible occupants who presented themselves for inspection.

Agent Esparza asked the driver, later to be identified as Samuel HERNANDEZ, for his citizenship. The driver responded that he was a U.S. Citizen. The agent then questioned the front seat passenger, later identified as a 17 year old juvenile, as to his citizenship and he replied he was a United States Citizen. The agent then turned his attention to the back seat passenger, who was sitting on the rear passenger side.

He questioned this passenger, later identified Manuel Jesus PAT-Cupul, regarding his citizenship. He replied by saying he was a United States Citizen. The agent then asked the rear seat passenger where he was born and the driver of the vehicle answered that the man was born in San Benito, Texas. Agent Esparza then asked the rear seat passenger where he was born again and he replies that he was born in San Benito, Texas in a very shaky voice. The agent then ask him where he was going and the driver answered for him. HERNANDEZ said the man was going to Corpus Christi, Texas.

Agent Esparza asked HERNANDEZ how they all know each other. HERNANDEZ told the agent that the juvenile is his step son and that the man in the back is a cousin. The agent asked the rear seat passenger what he was doing in San Benito and he said that he was on vacation. He then asked the rear seat passenger for identification. The man hesitated and eventually took his wallet out and gave the agent a State of Washington Identification card. As the man reached out to give him the card, the agent notice that the man's arm was shaking visibly.

The rear seat passenger was not making any eye contact with the agent while he was handing over the identification card. The man in the back seat was shaking visibly enough that the agent felt compelled to ask the man if he was alright, which he said yes. At this point, Agent Esparza was not satisfied with his immigration inspection of the rear seat passenger. He noted that the man would hesitate to answer his questions until the driver spoke first. This is a common tactic used during alien smuggling attempts since the smuggled aliens may not fully understand the agents' questions. Agent Esparza directed the driver to park his vehicle in the secondary area to further questioning of PAT-Cupul, the rear seat passenger, regarding his immigration status.

Once in the secondary inspection area of the checkpoint, Agent Teodolo Ruiz asked PAT-Cupul to exit the vehicle and escorted PAT-Cupul into the U.S. Border Patrol checkpoint for further questioning. It is common to separate individuals during questioning when one person involved is preventing agents from being able to directly speak with another person in the vehicle. Once inside the station, PAT-Cupul admitted to Agent Ruiz of being a citizen and national of Mexico, illegally present in the United States.

While PAT-Cupul was being questioned inside the U.S. Border Patrol checkpoint, Border Patrol Agents Leo Nevarez and Agent Scott came to assist with the vehicle in the secondary lane.

While in the secondary lane, Agent Nevares asked HERNANDEZ where he was going and he replied by saying Corpus Christi, Texas. While speaking with the driver, Agent Nevares noticed that the car is sitting low in the rear. The agent then asked for consent to search the trunk of the car. HERNANDEZ gave consent and opened the trunk, but only after activating the fuel door first. This could indicate an unfamiliarity with the vehicle. When HERNANDEZ opened the truck Agents Nevares and Scott found two subject in the trunk of the car. The two subject in the trunk of the vehicle were later identified as Antonio BENAVIDES-Mondragon and Jose Antonio FLORES-Gomez, both citizens of Mexico and illegally present in the United States.

At that time the driver and passenger were placed under arrest and escorted into the U.S. Border Patrol checkpoint for further interview and processing. Photographs were taken of the two subjects in the trunk. The photographs show that BENAVIDES and FLORES were covered with multiple bag and only their faces and arms are visible. The majority of the bags were packed with clothing and blankets, which were spread out during a complete search and inventory of the vehicle. Based on the photographs, BENAVIDES appeared to have sweated profusely while in the trunk. His pinky finger was bleeding when agents found him. He stated that as he was getting into the trunk, someone closed the trunk on his hand. There was a functioning glow-in-the-dark handle to open the trunk. There was, however, a large Stripes bag in front of the handle, as seen in the photographs, which blocked the view of the handle. Neither smuggled alien in the trunk reported they knew how to get out of the trunk. As per www.weather.com the outdoor temperature was 73 degrees Fahrenheit at the time of the discovery of the three subjects.

During the search of the vehicle, it was also discovered by Agent Nevares that another subject was hiding on the floorboard behind the driver, but was covered with a blanket. The subject, later identified as Umaldo KUMUL-Cupul, was identified as a citizen of Mexico and illegally present in the United States.

A complete search of the vehicle revealed a small brass knuckle piece in the trunk. A search of the juvenile revealed a small plastic bag with two grams of a leafy substance which field tested positive for marijuana. Agent Scott found this in the juvenile's front pocket.


Between approximately 10:00 p.m. and 11:07 p.m., all vehicle occupants were read their rights in their preferred languages. Samuel HERNANDEZ, the vehicle's driver, requested to speak with an attorney and was not asked any further questions about the case. The United States citizen juvenile in the vehicle also requested an attorney. The four smuggled aliens stated they understood their rights and were willing to give a statement to the agents.

Manuel DeJesus PAT-Cupul was the rear seat passenger in the vehicle and provided agents with the following information during the sworn statement. PAT stated that he made arrangements for himself and 2 other friends to come into the United States illegally. After crossing the river, a man picked them up and brought them to a hotel in San Benito where they stayed for about one week. After about a week or so, the driver of the car knocked on the door to the hotel. The driver told him that he was going to take them to San Antonio, which was their next destination. PAT was told to sit in the back seat of the car. One of the other men was laying on the floor of the car. He said there was very little talking during the drive. The driver asked if he had identification with him and he stated that he had a Washington State ID card. According to PAT, the driver did not tell him to say anything once

stopped by the Border Patrol. He was going to pay $1,300 upon reaching San Antonio, but not to the driver. PAT was able to identify Samuel HERNANDEZ as the driver of the vehicle in a photographic lineup.

Jose Antonio FLORES-Gomez was discovered in the trunk of the vehicle. FLORES stated that he crossed the river near Brownsville, Texas and was kept at a stash house in an unknown location for a day. He said that he was then moved to a hotel by the same men that took them to the stash house, where he remained for approximately ten days. FLORES said he was in the hotel room with three other men and stated they were fed twice a day. FLORES was able to identify Samuel HERNANDEZ as the driver of the vehicle in a photographic lineup. The subject stated that the driver, HERNANDEZ, picked them up at the hotel and instructed him to get into the trunk of the car. HERNANDEZ further instructed him not to make noise or any movements once they got to the checkpoint. FLORES said that he was afraid of being in the trunk because there was no way to exit the trunk in case of an accident. He further stated that it was hot and uncomfortable in the trunk.

Umaldo KUMUL-Cupul was found under a blanket on the floorboard behind the driver's seat. He stated that he entered the United States April 01, 2015 around 11:00 P.M and stayed at an abandoned house for one night. He then stated that his group was picked up by an unknown man and taken to a hotel for about 10 days to shower and eat. During a photographic lineup, KUMUL identified Samuel HERNANDEZ as the driver who picked them up from their hotel room approximately an hour and a half earlier. He stated that he was told by the driver to get in the vehicle. He was instructed by HERNANDEZ to stay calm and be quiet and hide under the blanket in the back seat behind the passenger when they got close to the checkpoint. He said the other two men were placed in the trunk of the vehicle. KUMUL stated that he feared for his life under the blanket because if there was an accident, he didn't know if he would survive or be able to get out of the vehicle. He stated he had not paid yet for being smuggled but he owed 10,000.00 Mexican Pesos. He said as soon as he got a job, he had to start paying that amount back.

Antonio BENAVIDES-Mondragon was found in the trunk of the vehicle. He stated that he had been removed previously, but has been living in the US for the last five years. The last time he entered was on January 3, 2013 through Hidalgo, TX. He has been living in Port Isabel, Texas and working as a painter painting houses.

BENAVIDES stated that he paid $2,000 to be smuggled to Dallas, Texas. He said that he asked around if his friends knew how to contact a "coyote". He met the "coyote" at a house in Brownsville, TX. He claims he doesn't know the address and doesn't remember how to get there. He does not have a phone number for the "coyote". When he met the "coyote" he arrived at the house in a car. He described the "coyote" as having tattoos on his right arm, shorter then himself, short hair, and a possible mustache. He stated that "coyote" stood at about his nose level. BENAVIDES said he believed he could pick the "coyote" from photo line, but was not able to pick Samuel HERNANDEZ from the six photographs.

BENAVIDES said the "coyote" opened the trunk and told to get in. Before getting into the trunk, BENAVIDES said he paid the "coyote". When the trunk was opened, he noticed another person already in there. After BENAVIDES got into the trunk, he said the "coyote" shut the trunk lid. He said he didn't move his hand soon enough and the lid closed on his finger, cutting it. BENAVIDES said he did not know how to open the trunk from the inside and doesn't think he would be able to

escape in case of an emergency. He did not know where either a trunk release lever or the lever to put down the backseat were located. BENAVIDES said he was in the trunk from the time they left Brownsville until they reached the checkpoint. He and the other person were confined to the trunk. At no time was the back seat lowered. He said it was a little hot in the trunk. At times, he said he had to take short breaths because there was a lack of air and other times he could take normal breaths. Record checks show that BENAVIDES has previously been convicted of illegal re-entry into the United States.

The facts of this case were presented to Assistant United States Attorney Sam Brown who accepted Samuel HERNANDEZ for prosecution of 8 USC 1324, Alien Smuggling. The juvenile co-principal in the case was released to his mother due to his age. Antonio BENAVIDES-Mondragon was accepted for 8 USC 1326, Illegal Re-Entry. Jose Antonio FLORES-Gomez and Manuel DeJesus PAT-Cupul were held as material witnesses in this case. Umaldo KUMUL-Cupul was not needed as a material witness. A sworn statement was taken from KUMUL and he was returned to Mexico.

David Smith, Border Patrol Agent

Sworn to before me, signed in my presence, and
probable cause found on this day, April 13th, 2015

Jason B. Libby
United States Magistrate Judge